# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| OX BIOMED LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: |
| QUANTUM PRACTITIONER SERVICES, LLC, | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, OX BioMed LLC, by and through its undersigned counsel, sues Defendant, Quantum Practitioner Services, LLC, and alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff, OX BioMed LLC ("OX"), is a foreign limited liability company organized and operating under the laws of Nevada, having its principal address at 9805 Double R Boulevard, Suite 101, Reno, Nevada 89521, and is authorized to conduct business in Florida, including Manatee County, Florida.

2. Defendant, Quantum Practitioner Services, LLC ("Defendant"), is a Florida limited liability company, having its principal address at 6547 Kenava Loop, Palmetto, Florida 34221.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees, and there is complete diversity of citizenship between OX and Defendant.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business in this District. In addition, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the action occurred in this District.

## FACTUAL ALLEGATIONS

### The Contract

5. OX is a privately held medical distribution company that works with healthcare providers to supply advanced wound care products, streamlined logistics, and clinical support systems.

6. Defendant provides patient-centered healthcare services including wound care and otherwise specializes in patient care and health services.

7. On or about July 31, 2025, OX provided Defendant with a written Service Agreement governing the terms under which Defendant could order the human cell, tissue, and xenograft products identified in Schedule A of the Service Agreement (the "Products") from OX.

8. Although the Service Agreement was not signed by Defendant, OX and Defendant entered into an ongoing, commercial and sale agreement, in which Defendant repeatedly ordered and received Products from OX in accordance with the terms of the Service Agreement.

9. The Service Agreement also specifically states that, if OX accepts an order from Defendant, OX would generate an invoice reflecting "that [Defendant] has agreed to purchase the Products identified on the invoice and the terms of the purchase."

10. The Service Agreement further states that, after OX accepts Defendant's order and generates the invoice, OX would "promptly ship the Products identified on the invoice for delivery to the [Defendant]."

11. For each order, Defendant agreed to pay OX the balance due and stated on the invoice within sixty days of the date of the invoice.

12. Under the terms of the Service Agreement, Defendant was required to notify OX "of any discrepancies with orders between the packing slip and the contents of the shipment within 2 business days after receipt of the Product."

13. The Service Agreement allows OX to levy a finance charge of 1.5% per month, or the maximum amount permitted by law, whichever is less, plus all expenses incurred in collection if Defendant failed to make full payment due on each invoice within sixty days of the date of the invoice.

## **Defendant's Orders and Unpaid Invoices**

14. Defendant placed no fewer than twelve orders with OX between August 2025 and October 2025, amounting to a total of $4,113,735.19 for certain Products (the "Orders").

15. OX accepted Defendant's Orders and generated invoices for each of the Orders per the terms of the Service Agreement, reflecting the quantities of Products, prices, and payment terms, including a Due Date.

16. OX shipped the Products identified in the invoices to Defendant per the terms of the Service Agreement.

17. Defendant received and accepted the Products identified in the invoices for the Orders and in conformity with the terms set forth in the Service Agreement more than sixty days ago.

18. Defendant paid seven of the invoices generated for the Orders in full. Specifically, Defendant paid the following invoices in full:

   a. Invoice # 5448 totaling $75,513.07;

   b. Invoice # 5631 totaling $75,513.07;

   c. Invoice # 5824 totaling $80,547.27;

   d. Invoice # 6035 totaling $513,488.87;

   e. Invoice # 6454 totaling $134,956.80;

   f. Invoice # 6456 totaling $96,397.72; and

      g. Invoice # 5458 totaling $71,487.72.

19. Defendant made partial payments on three invoices generated for the Orders, thereby acknowledging the validity of the Orders and amounts due but has failed to pay the remaining balance on three Orders. Specifically, Defendant has failed to pay the remaining balance on the following invoices:

      a. Invoice # 4956 dated August 8, 2025 with a remaining balance of $455,618.57, which was due on October 7, 2025;

      b. Invoice # 5093 dated August 18, 2025 with a remaining balance of $580,575.37, which was due on October 17, 2025; and

      c. Invoice # 5624 dated September 4, 2025 with a remaining balance of $300,000.49, which was due on November 3, 2025.

20. The total amount due and owing on the partially paid invoices for the Orders is $1,336,194.43.

21. Defendant has not made any payments on two invoices generated for the Orders. Specifically, Defendant has not made any payments on the following invoices:

      a. Invoice # 5089 dated August 18, 2025 totaling $820,575.37, which was due on October 17, 2025; and

      b. Invoice # 5210 dated August 21, 2025 totaling $75,513.07, which was due on October 20, 2025.

22. The total amount due and owing on the unpaid invoices for the Orders is $896,088.44.

23. As of the date of this Complaint, OX has not received any notice from Defendant of any defects in the Products associated with the Orders.

24. OX has made written and verbal demands to Defendant for payment of the past due amount on the Orders.

25. To date, Defendant has failed, and continues to refuse, to pay OX the total amount of $2,232,282.87 due and owing on the Orders pursuant to the Service Agreement (the "Past Due Amount").

26. Pursuant to Section 5 of the Service Agreement, in addition to the Past Due Amount, OX is also entitled to recover a finance charge of 1.5% per month on the amounts due and owing on the Orders.

27. In addition to the Past Due Amount, and pursuant to § 5 of the Service Agreement, OX is entitled to recover all expenses of collection including its attorneys' fees and costs incurred in collecting all amounts due and owing on the Orders.

### **COUNT I—BREACH OF CONTRACT**
### **(Florida Uniform Commercial Code)**

OX realleges and incorporates Paragraphs one (1) through twenty-seven (27) above as if fully set forth herein, and further states:

28. OX and Defendant are merchants within the meaning of § 672.104(1), Fla. Stat., of Florida's Uniform Commercial Code.

29. A valid and enforceable contract for the purchase and sale of the Products (i.e., goods), the Service Agreement, was formed between OX and Defendant by their conduct in recognizing the existence of the Service Agreement pursuant to §§ 672.201(3)(c) and 672.204, Fla. Stat.

30. Defendant's placement of the Orders constitutes valid offers to purchase the Products from Defendant under the terms of the Service Agreement.

31. OX accepted Defendant's Orders by providing invoices for amounts owed and shipped the Products to Defendant in accordance with the Service Agreement and § 672.206, Fla. Stat.

32. The Products were delivered to, received, and accepted by Defendant.

33. Therefore, OX and Defendant entered into a binding contract for each of the Orders as detailed in the corresponding invoices generated and issued by OX.

34. OX fully performed its obligations with respect to each of the Orders placed by Defendant by delivering the Products to Defendant.

35. The parties' repeated transactions as evidenced by the Orders developed their course of performance and course of dealing, which mandates payment from Defendant for Products supplied, received, and accepted by Defendant.

36. Defendant failed to pay the Past Due Amount for the Orders and, as a result, is in breach of the Service Agreement.

37. As a direct and proximate result of Defendant's failure to pay, OX has suffered damages in the amount no less than $2,232,282.87 as well as all costs of collection.

**WHEREFORE**, OX demands judgment against Defendant for $2,232,282.87, plus costs, interest, attorneys' fees, and such other relief this Court deems just and proper.

## COUNT II—ACCOUNT STATED

OX realleges and incorporates Paragraphs one (1) through twenty-seven (27) above as if fully set forth herein, and further states:

38. OX rendered invoices to Defendant reflecting the amounts due for the Products delivered.

39. Defendant received the invoices and made no objection after receiving them.

40. Defendant even made partial payments on three of the invoices, thereby acknowledging the correctness of the stated balance in the invoices.

41. Therefore, Defendant accepted the resulting balances on the invoices, and an account stated was created between OX and Defendant for the unpaid balance owed by Defendant on the invoices.

42. Defendant has failed to pay the balance due on the invoices.

43. OX has been damaged in the amount no less than $2,232,282.87 as well as all costs of collection.

**WHEREFORE**, OX demands judgment against Defendant for $2,232,282.87, plus costs, interest, and such other relief this Court deems just and proper.

### COUNT III—OPEN ACCOUNT

OX realleges and incorporates Paragraphs one (1) through twenty-seven (27) above as if fully set forth herein, and further states:

44. OX and Defendant engaged in a continuing business relationship involving a series of Orders for the sale of Products.

45. OX maintained an open account reflecting debits for Products sold and credits for payments received.

46. The Products were delivered to, received, and accepted by Defendant.

47. Defendant has failed to pay the full balance due on the open account.

48. The outstanding balance due and owing on the open account is no less than $2,232,282.87, which is representative of the agreed-upon sales price for the value of Products delivered.

**WHEREFORE**, OX demands judgment against Defendant for $2,232,282.87, plus costs, interest, and such other relief this Court deems just and proper.

### COUNT IV—UNJUST ENRICHMENT
### (Pled in the Alternative)

OX realleges and incorporates Paragraphs one (1) through twenty-seven (27) above as if fully set forth herein, and further states:

49. OX conferred a benefit upon Defendant by delivering the Products to Defendant.

50. Defendant had knowledge of and accepted the benefit of the Products.

51. Defendant retained the benefit without paying OX the full value of the Products received.

52. As a direct and proximate result of Defendant's failure to pay, OX has been damaged in the amount no less than $2,232,282.87.

53. Under the circumstances, it would be inequitable for Defendant to retain the benefits without paying OX the full amount due and owing, and OX is without an adequate remedy at law.

**WHEREFORE**, OX demands judgment against Defendant for $2,232,282.87, plus costs, interest, and such other relief this Court deems just and proper.

DATED THIS: February 23, 2026

        Respectfully submitted,

        **WARGO, FRENCH & SINGER LLP**
*Counsel for Plaintiff OX BioMed LLC*
1 Alhambra Plaza, Suite 1410
Coral Gables, Florida 33134
Telephone: (305) 777-6000
Facsimile: (305) 777-6001
Email: dperez@wfslaw.com
Service: flservice1@wfslaw.com


By: */s/ Daniel H. Perez*
    JOSEPH D. WARGO
    Florida Bar No. 934194
    DANIEL H. PEREZ
    Florida Bar No. 106141
    J. BLAKE MANSKER
    Florida Bar No. 1041091